## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DEBORAH KNIGHT | :
  | :
     Plaintiff, | : **Civil Action 2:19-CV-02461**
   v. | :
PUBLIC PARTNERSHIPS, LLC | :
  | :
     Defendant. | :
  | :

### <u>ORDER</u>

**AND NOW**, this _____ day of _____, 2020, upon

consideration of the Defendant, Public Partnerships, LLC's Motion to Dismiss the Plaintiffs'

Complaint, and Plaintiffs' opposition thereto, it is hereby **ORDERED** and **DECREED** that

Defendants' Motion is **DENIED**.

        BY THE COURT:


        _____
        HONORABLE R. BARCALAY SURRICK, USDJ

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DEBORAH KNIGHT

          Plaintiff,

    v.

PUBLIC PARTNERSHIPS, LLC

          Defendant.

: **Civil Action 2:19-CV-02461**

## PLAINTIFF'S OPPOSITION TO DEFENDANT PUBLIC PARTNERSHIPS, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Plaintiff, Deborah Knight ("Plaintiff") files this opposition in response to Defendant, Public Partnerships, LLC's ("Defendant") Motion to Dismiss the Plaintiff's Complaint, pursuant to *F.R.C.P. 12(b)(6)*

In support of this Motion, Plaintiff relies on the points set forth in the accompanying Memorandum of Law, and all exhibits and other supporting documents. A proposed Order is attached.

Plaintiff requests that the Defendant's motion be denied.

Respectfully submitted,
SAFFREN & WEINBERG

BY: _____

MARC A. WEINBERG, ESQ.
Attorney for Plaintiff
P.A. I.D. 60643
815 Greenwood Ave, Suite 22
Jenkintown, PA 19046
Phone: (215) 576-0100

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBORAH KNIGHT | : | |
| | : | |
| Plaintiff, | : | **Civil Action 2:19-CV-02461** |
| v. | : | |
| PUBLIC PARTNERSHIPS, LLC | : | |
| | : | |
| Defendant. | : | |
| | : | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

### I.  Introduction

Defendant, Public Partnerships, LLC (hereinafter "Defendant"), brings this Motion to Dismiss Plaintiff, Deborah Knight's (hereinafter "Plaintiff") Complaint. Defendant bases its motion on the premise that the Plaintiff is pursuing the same claims against the Defendant, which were previously litigated, and dismissed on summary judgment, by Judge Schmehl, in the matter of *Talarico v. Public Partnerships, LLC*.  However, Plaintiff argues that her matter is factually distinguishable from that of the *Talarico* class plaintiffs, and as Plaintiff properly withdrew from the conditional class prior to Judge Schmel's decision in the *Talarico* matter, her claims should not be dismissed.

### II.  Facts and Procedural History

This matter arises from the Defendant's violation of the Fair Labor Standards Act. Beginning on or about August 1, 2016, Plaintiff began working for the the Defendant as a home health aide. Plaintiff cared for one (1) individual, her mother, who is currently seventy-seven (77) years old. Initially, Plaintiff was designated as a "live-in" worker, by the Defendant, but

Plaintiff did not live with her mother, while providing care. Plaintiff continues to care for her mother, however, throughout the course of her employment, the Plaintiff worked overtime (in excess of forty hours per week), and was not compensated for her overtime for the time period of August 1, 2016 through March 9, 2019. (See Plaintiff's Complaint attached hereto as Exhibit "A"). Plaintiff began this lawsuit as an individual, after having withdrawn her consent to be part of a current, pending FLSA class action suit, which was ongoing in the Eastern District of Pennsylvania.

**Class Action**

Prior to the initiation of this matter, Plaintiff was a member of a class action suit brought for violation of FLSA, and filed in the Eastern District of Pennsylvania. The matter, *Talarico v. Public Partnerships, LLC d/b/a/ PCG, Public Partnerships*, No. 17-cv-02165 (hereinafter, the "*Talarico* matter").

Following a Motion to Dismiss filed in this matter, Plaintiff filed Motion to Withdraw from the class action. Plaintiff withdrew her participation from the class properly, as she was permitted to do so by Court Order (See Order attached hereto as Exhibit "B"). This Court then denied the Defendant's Motion to Dismiss in this matter. The Defendant did not oppose Plaintiff's motion filed to withdraw from the class action, despite being fully aware that this matter was pending. On January 28, 2020, Judge Schmehl granted PPL's Motion for Summary Judgment in the *Talarico* matter. On February 25, 2020, class plaintiffs appealed Judge Schmehl's ruling to the Third Circuit Court of Appeals.

Defendant now seeks to bind Plaintiff to the decision rendered by Judge Schmehl, which has been appealed (See Judge Schmehl's January 28, 2020 Decision, attached hereto as Exhibit "C"). Defendant seemingly argues that Plaintiff, who joined the class initially, in the *Talarico* matter, is somehow bound to the decision rendered in *Talrico*, despite Plaintiff's case being factually distinguishable. The parties have conducted no discovery, to date, as this matter has been peppered by seemingly ceaseless motions to dismiss by the Defendant.

## III. Argument

### A. Legal Standard

Defendant brings another Motion to Dismiss in this matter, once again under *Fed. R. Civ. P. 12(b)(6)* alleging that Plaintiff's claims are precluded by the ruling rendered in Judge Schmehl's decision in the *Talarico* matter. As a general matter, when considering a motion to dismiss pursuant to *Rule 12(b)(6)* the Court must accept as true all well-pleaded allegations of fact. *Pennsylvania Nurses Ass'n. v. Pennsylvania State Educ. Ass'n.,* 90 F.3d 797, 799-800 (3d Cir. 1996), *cert denied,* 519 U.S. 1110, 117 S. Ct. 947, 136 L. Ed. 2d 835 (1997). The Court must view all facts, and reasonable inferences based on those facts, in the light most favorable to the non-moving party. *General Motors Corp. v. New A.C. Chevrolet, Inc.,* 263 F.3d 296, 325 (3d Cir. 2001). Dismissal is appropriate only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984); *see also Lorenz v. CSX Corp.,* 1 F.3d 1406, 1411 (3d Cir. 1993).

Generally, "to the extent that [a] court considers evidence beyond the complaint in deciding a *R. 12(b)(6)* motion, it is converted to a motion for summary judgment." *Anjelino v.*

*New York Times Co.,* 200 F.3d 73, 88 (3d. Cir. 1999). However, in resolving a *R.12(b)(6)* motion

to dismiss, a court may look beyond the complaint to matters of public record, and documents

referenced in the complaint or essential to a plaintiff's claim which are attached to a defendant's

motion. *Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir. 1993).

**B.     Plaintiff's Claims Are Not Barred by the Doctrines of Res Judicata or Collateral Estoppel**

**i.     Res Judicata**

The Defendant contends that Plaintiff's claims in this matter are barred under the doctrine

of claim preclusion or *res judicata.* The defense of claim preclusion requires a defendant to

demonstrate that there has been (1) a final judgment on the merits in a prior suit involving (2) the

same parties or their privies and (3) a subsequent suit based on the same cause of action. *United*

*States v. Athlone Indus., Inc.,* 746 F.2d 977, 983 (3d Cir. 1984).

Here, there is no disputing the identity of the parties, or that the the *Talarico* suit ended in

a final judgment on the merits. However, Plaintiff must point out that that she was not a member

of the class action, when the class action was dismissed by Judge Schmehl. While a final

judgment in a class action can preclude the claims of all class members who do not timely opt

out of the class action, it should not follow that a former class member, who properly withdrew

from the class, be bound to the decision rendered when that party is no longer a member of the

class action. *See, Smith v. Bayer Corp.*, 564 U.S. 299, 314, 131 S. Ct. 2368, 180 L. Ed. 2d 341

(2011); *See also, Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 874, 104 S. Ct.

2794, 81 L. Ed. 2d 718 (1984) ("[U]nder elementary principles of prior adjudication a judgment

in a properly entertained class action is binding on class members in any subsequent litigation.").

Though Plaintiff disputes the applicability of the final judgment in the *Talarico* action, as she was not a member of the class when the decision was rendered, the issue posed by the Defendant, is whether this action and the *Talarico* action are based upon the same cause of action. For the purposes of claim preclusion, a cause of action is viewed in many jurisdictions as a "transaction," meaning, a series of related facts that arise out of a particular event or series of events. *See, e.g., Huck on Behalf of Sea Air Shuttle Corp. v. Dawson*, 106 F.3d 45, 48, 35 V.I. 560 (3d Cir. 1997). The Third Circuit has adopted this view, as set forth in *Section 24 of the Restatement (Second) of Judgments (1982)*:

> (1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the [rule of claim preclusion], the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.
>
> (2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations. . . ."

*Huck*, 106 F.3d at 48-49 (quoting *Restatement (Second) of Judgments § 24* (1982)); *accord CoreStates Bank, N.A. v. Huls America, Inc.*, 176 F.3d 187, 194 (3d Cir. 1999)

Therefore, in order for this Court to resolve whether both the *Talarico* class action, and this matter,  the Court must look to determine the similarities between this matter and the *Talarico* matter. Plaintiff would submit that the *Talarico* matter is factually distinguishable from this case. As evidenced in Judge Schmehl's decision (Exhibit "C"), the class plaintiffs performed services under defendant, PPL's contract with Pennsylvania, relating to a federal Medicaid program, called the Home and Community-Based Services waiver program. (See Exhibit "C", p.

2). One such waiver program, which was at the heart of the *Talarico* action, authorized "Self-Directed Personal Assistance Services" to Participant-Employers, who are between the ages of 18 and 60, with physical disabilities. (See Exhibit "C", p. 2). The "stated purpose of the waiver program is to permit a state to furnish 'services that assist Medicaid beneficiaries to live in the community and avoid institutionalism." (See Exhibit "C", p. 2). In the present matter, the Plaintiff worked as a Home Health Aid, caring not for a "participant-employer", who is between the ages of 18-60, and with physical disabilities, but rather, caring for her mother, who is 77 years old, and does not fall into the requisite Participant-Employer category outlined in the *Talarico* matter. Though Plaintiff worked for PPL, Plaintiff did not provide care for the specific type of Participant-Employer described in the *Talarico* matter. This matter and the *Talarico* matter, are distinguishable on that basis. If the Plaintiff here is not caring for the same class of participant-employer as the class plaintiffs in the *Talarico* matter, it cannot follow that Plaintiff engaged in any transaction, or series of connected transactions, out of which the class action arose.

Additionally, the parties have conducted no discovery in this matter, with the Defendant instead filing Motions to Dismiss, first on the basis that Plaintiff was a member of the class action, while this matter was pending, and now, on the basis that, despite having withdrawn from the class action, Plaintiff should be bound to the decision made by Judge Schmehl. Though Defendant insists that Plaintiff is seeking a second bite at the apple, by pursuing her individual claims, the parties have hardly explored the quite different set of circumstances from which Plaintiff's claims arise, and those of the class plaintiffs in the *Talarico* matter. Thus, Defendant's res judicata argument fails, and this Motion cannot be granted on the basis of claim preclusion.

### ii.    Collateral Estoppel

Defendant also argues that Plaintiff's claims are precluded under the doctrine of collateral

estoppel. Collateral estoppel prohibits the relitigation of issues that have been adjudicated in a

prior lawsuit. The *Restatement (Second) of Judgments* articulates the general rule of collateral

estoppel, as follows:

> When an issue of fact or law is actually litigated and determined by a valid and final
> judgment, and the determination is essential to the judgment, the determination is
> conclusive in a subsequent action between the parties, whether on the same or a different
> claim.

*Restatement (Second) of Judgments § 27 (1980).*

The Third Circuit has consistently applied this general rule in determining the collateral

effect of federal court judgments. For example, in *Burlington Northern Railroad Co. v. Hyundai*

*Merchant Marine*, 63 F.3d 1227 (3d Cir. 1995), the Court held that the "prerequisites for the

application of issue preclusion are satisfied when: (1) the issue sought to be precluded [is] the

same as that involved in the prior action, (2) that issue [was] actually litigated; (3) it [was]

determined by a final and valid judgment; and (4) the determination [was] essential to the prior

judgment." Id. at 1231-2 (quoting, *In re Graham*, 973 F.2d 1089, 1097 (3d Cir. 1992)); *see also*

*Hawksbill Sea Turtle v. FEMA*, 126 F.3d 461, 474-75 (3d Cir. 1997); *Raytech Corp. v. White*, 54

F.3d 187, 190 (3d Cir. 1995).

However, this general rule is also subject to several equitable exceptions exist, to ensure

that the doctrine of collateral estoppel is applied in a manner that will serve the twin goals of

fairness and efficient use of private and public litigation resources. *See, AMTRAK v. Pa. PUC*,

288 F.3d 519, 525 (3d Cir. 2002). When considering equitable factors the court looks to

determine (1) whether both parties to the subsequent suit were also parties to the first so that there is "mutuality of estoppel," and (2) whether the estoppel is being asserted (a) "offensively" by a plaintiff seeking to estop a defendant from relitigating issues which the defendant has previously litigated and lost, or (b) "defensively" by a defendant seeking to estop a plaintiff from relitigating an issue which the plaintiff has previously litigated and lost. *See, Blonder-Tongue Labs., Inc. v. University of Ill. Found.,* 402 U.S. 313, 328-29, (1971); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 328 (1979). This matter is a case of defensive collateral estoppel, where the Defendant is looking to estop the plaintiff from litigating an issue which defendant asserts Plaintiff has litigated and lost.

First, Plaintiff disputes that the identical issue was previously adjudicated. As outlined above, the Plaintiff was caring for her mother, who was not within the same category of "participant employer" as those being cared for by the class plaintiffs in the *Talarico* matter. As the matters are factually distinguishable, on that basis alone, it cannot be argued that the identical issue was previously adjudicated, when Plaintiff was withdrawn from the class action, and not caring for the type of "participant-employer" described in the class action. As to the second factor, Plaintiff does not dispute the class action was actually litigated, but rather, points out that the matter is currently being appealed, by class plaintiffs, to the Third Circuit. However, Plaintiff must once again note that as she was not a member of the class action at the time the decision was rendered, she cannot be bound to the decisions in that matter. Though she was previously part of the class, Plaintiff validly, and with the Court's permission, withdrew from the class. Additionally, despite being fully aware that Plaintiff intended to withdraw from the class, and

had filed a motion, defendant filed no opposition to the plaintiff's motion to withdraw, knowing full well that this matter was pending.

As to the third and fourth factors of the collateral estoppel test, though the determination rendered in the class action was final, the *Restatement (Second) of Judgments* explains the rationale behind the requirement that the initial resolution of the relevant issue be essential to the judgment:

> If issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded. Such determinations have the characteristics of dicta, and may not ordinarily be the subject of an appeal by the party against whom they were made. In these circumstances, the interest in providing an opportunity for a considered determination, which if adverse may be the subject of an appeal, outweighs the interest in avoiding the burden of relitigation.

*Restatement (Second) of Judgments* § 27, cmt. h; *See also*, *O'Leary v. Liberty Mut. Ins. Co.*, 923 F.2d 1062 (3d Cir. 1991).

Again, as outlined above, the Plaintiff had withdrawn from the class action, with Judge Schmehl's permission. Additionally, this matter remains factually distinguishable from that of the class plaintiffs in the *Talarico* matter, as plaintiff was providing care for an individual outside the scope of the participant-employers which Judge Schemel referenced in his opinion, and which were the subject of the class action. Though Judge Schemel detailed his reasoning for granting summary judgment on the issue of PPL's status of an employer of the class plaintiffs, Plaintiff argues that as her matter is factually distinguishable, the final determination has no bearing on this matter. Finally, no discovery has been conducted in this matter, but rather, defendant relies solely on the discovery taken in the *Talarico* matter. Had the parties engaged in any discovery, it would have quickly become clear that Plaintiff was providing care for an individual outside the

category of participant-employer described in the class action. Though Plaintiff is asserting a similar claim for unpaid wages in this matter, her case is distinguishable from that of the class plaintiffs, and she should not be estopped from bringing her claim.

Finally, the defendant argues that the Plaintiff was fully represented by class counsel during her time as an opt-in class member, and therefore, participated in the *Talarico* litigation. As argued numerous times during the course of this litigation, plaintiff withdrew her consent as a member of the class action, with the approval of Judge Schmehl. As PPL had filed a Motion for Summary Judgment in the *Talarico* matter, Ms. Knight sought permission of this Court for a voluntary dismissal pursuant to *R. 41(a)(2)*. Importantly, though a plaintiff's voluntary dismissal under *R. 41(a)(2)* requires court approval, the general rule provides that such a motion should be granted liberally, and denied only where dismissal would subject the defendant to some prejudice other than "the mere prospect of a second lawsuit." *In re Paoli R.R. Yard P.C.B. Litig.* 916 F.2d 829, 863 (3d Cir. 1990). Additionally, "plain legal prejudice simply does not result…when a plaintiff may gain some tactical advantage by a voluntary dismissal." *Id.* at 863.

When deciding a motion to dismiss pursuant to *R. 41(a)(2)*, the court must "weigh the relevant equities and do justice between the parties in each case. Courts generally consider any excessive and duplicative expense of a second litigation; the effort and expense incurred by a defendant in preparing for trial; the extent to which the pending litigation has progressed, and the claimant's diligence in moving to dismiss." *Pouls v. Mills* 1993 U.S. Dist. LEXIS 11134, at *2 (E.D.Pa. Aug. 12, 1993). Judge Schmehl weighed these factors, and despite plaintiff having previously been a member of the class action, Plaintiff was granted permission to withdraw from the class action.

This matter is similar to *Costanza v. Citizens Fin. Group, Inc.*, 2011 U.S. Dist. LEXIS 121568 (W.D.Pa. Oct. 20, 2011), where an opt-in class plaintiff in a FLSA action sought to voluntarily discontinue her action to pursue her claims in state court. The Defendant in *Costanza* had answered the complaint and undertaken litigation in the *Costanza* matter. *Id. at *3*. The Court, however, found that the defendant could not show it would suffer any plain legal prejudice, and that the plaintiff's intent to re-file a claim in state court did not, in itself, rise to the level of plain legal prejudice. *Id.* Additionally, the *Costanza* court found that the defendant was not prejudiced by their efforts and expenses in litigation, as other opt-in plaintiffs remained, and the litigation would continue. *Id.* Thus, the Court granted plaintiff's request for a dismissal. *Id.*

Here, as in *Constanza*, Ms. Knight was one of a multitude of plaintiffs, and she individually sought to dismiss her claims, so that she could pursue individual claims against the defendant, for her factually distinguishable claims against the defendant.

The defendant cannot satisfy the requirements to show plaintiff's claims are precluded under the theories of collateral estoppel, or res judicata, on the basis that the Plaintiff was a member of the *Talarico* class action, and as such, defendant's Motion to Dismiss must be denied.

IV.  **Conclusion**

For all the foregoing reasons, the Defendant, PPL's Motion to Dismiss must be denied.


Respectfully submitted,

SAFFREN & WEINBERG

BY: _____
MARC A. WEINBERG, ESQ.
Attorney for Plaintiff
P.A. I.D. 60643
815 Greenwood Ave, Suite 22
Jenkintown, PA 19046
Phone: (215) 576-0100

## CERTIFICATE OF SERVICE

I, Marc A. Weinberg, Esquire, certify that a true and correct copy of Plaintiff's Opposition to Defendant's Motion to Dismiss, and corresponding Exhibits were electronically filed with the Court on the date below and is available for viewing and downloading from the ECF System maintained by the Eastern District Of Pennsylvania, and to best knowledge of the undersigned, all parties are represented by counsel who have access to the ECF System.

SAFFREN & WEINBERG

BY: _____

MARC A. WEINBERG, ESQ.
*Attorney for Plaintiff*
Pa. Atty. I.D. 60643
815 Greenwood Ave, Suite 22
Jenkintown, PA 19046
Phone: (215) 576-0100
Mweinberg@saffwein.com

Dated: 6/3/20

# EXHIBIT A

JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Deborah Knight | Public Partnerships, LLC |

**(b)** County of Residence of First Listed Plaintiff   Chester
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)**   Attorneys *(Firm Name, Address, and Telephone Number)*

Marc A. Weinberg
815 Greenwood Ave., Ste 22 Jenkintown, PA 19046 215-576-0100

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❏ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ❏ 2  U.S. Government Defendant
- ❏ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - | ❏ 690 Other | ❏ 423 Withdrawal | ❏ 376 Qui Tam (31 USC |
| ❏ 130 Miller Act | ❏ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ❏ 140 Negotiable Instrument | Liability | ❏ 367 Health Care/ | | | ❏ 400 State Reapportionment |
| ❏ 150 Recovery of Overpayment | ❏ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | ❏ 330 Federal Employers' | Product Liability | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted | Liability | ❏ 368 Asbestos Personal | | ❏ 835 Patent - Abbreviated | ❏ 460 Deportation |
| Student Loans | ❏ 340 Marine | Injury Product | | New Drug Application | ❏ 470 Racketeer Influenced and |
| (Excludes Veterans) | ❏ 345 Marine Product | Liability | | ❏ 840 Trademark | Corrupt Organizations |
| ❏ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ❏ 480 Consumer Credit |
| of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | ☒ 710 Fair Labor Standards | ❏ 861 HIA (1395ff) | ❏ 490 Cable/Sat TV |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle | ❏ 371 Truth in Lending | Act | ❏ 862 Black Lung (923) | ❏ 850 Securities/Commodities/ |
| ❏ 190 Other Contract | Product Liability | ❏ 380 Other Personal | ❏ 720 Labor/Management | ❏ 863 DIWC/DIWW (405(g)) | Exchange |
| ❏ 195 Contract Product Liability | ❏ 360 Other Personal | Property Damage | Relations | ❏ 864 SSID Title XVI | ❏ 890 Other Statutory Actions |
| ❏ 196 Franchise | Injury | ❏ 385 Property Damage | ❏ 740 Railway Labor Act | ❏ 865 RSI (405(g)) | ❏ 891 Agricultural Acts |
| | ❏ 362 Personal Injury - | Product Liability | ❏ 751 Family and Medical | | ❏ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ❏ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | ❏ 791 Employee Retirement | ❏ 870 Taxes (U.S. Plaintiff | ❏ 896 Arbitration |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | Income Security Act | or Defendant) | ❏ 899 Administrative Procedure |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate | | ❏ 871 IRS—Third Party | Act/Review or Appeal of |
| ❏ 240 Torts to Land | ❏ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ❏ 245 Tort Product Liability | Accommodations | ❏ 530 General | | | ❏ 950 Constitutionality of |
| ❏ 290 All Other Real Property | ❏ 445 Amer. w/Disabilities - | ❏ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 446 Amer. w/Disabilities - | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration | | |
| | Other | ❏ 550 Civil Rights | Actions | | |
| | ❏ 448 Education | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ❏ 2 Removed from State Court
- ❏ 3 Remanded from Appellate Court
- ❏ 4 Reinstated or Reopened
- ❏ 5 Transferred from Another District *(specify)*
- ❏ 6 Multidistrict Litigation - Transfer
- ❏ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 USC 201

Brief description of cause:
Fair Labor Standards

## VII. REQUESTED IN COMPLAINT:

❏ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ❏ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE   6/5/19

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Deborah Knight | : | CIVIL ACTION |
| v. | : | |
| Public Partnerships, LLC | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.　　　　( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
　　and Human Services denying plaintiff Social Security Benefits.　　　　( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.　( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
　　exposure to asbestos.　　　　( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
　　commonly referred to as complex and that need special or intense management by
　　the court. (See reverse side of this form for a detailed explanation of special
　　management cases.)　　　　( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.　　(✓)

| | | |
|---|---|---|
| June 4, 2018 | Marc A. Weinberg | Deborah Knight |
| Date | Attorney-at-law | Attorney for |
| 215-576-0100 | 215-576-6288 | mweinberg@saffwein.com |
| Telephone | FAX Number | E-Mail Address |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 289 Coldron Drive Oxford, PA 19363 _____

Address of Defendant: _____ PO Box 1108 Wilkes Barre, PA 18773 _____

Place of Accident, Incident or Transaction: _____ Chester _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year     Yes ☐    No ☑
previously terminated action in this court?

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit     Yes ☐    No ☑
pending or within one year previously terminated action in this court?

3. Does this case involve the validity or infringement of a patent already in suit or any earlier     Yes ☐    No ☑
numbered case pending or within one year previously terminated action of this court?

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights     Yes ☐    No ☑
case filed by the same individual?

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 06/04/2019 _____ _____ 60643 _____

          *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.**    *Federal Question Cases:*                      **B.**    *Diversity Jurisdiction Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts      ☐ 1. Insurance Contract and Other Contracts
☐ 2. FELA                                           ☐ 2. Airplane Personal Injury
☐ 3. Jones Act-Personal Injury                         ☐ 3. Assault, Defamation
☐ 4. Antitrust                                          ☐ 4. Marine Personal Injury
☐ 5. Patent                                            ☐ 5. Motor Vehicle Personal Injury
☐ 6. Labor-Management Relations                      ☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Civil Rights                                       ☐ 7. Products Liability
☐ 8. Habeas Corpus                                 ☐ 8. Products Liability – Asbestos
☐ 9. Securities Act(s) Cases                           ☐ 9. All other Diversity Cases
☐ 10. Social Security Review Cases                          *(Please specify):* _____
☐ 11. All other Federal Question Cases
     *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Marc A. Weinberg _____, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 06/04/2019 _____ _____ 60643 _____

          *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____289 Coldron Drive Oxford, PA 19363_____

Address of Defendant: _____PO Box 1108 Wilkes Barre, PA 18773_____

Place of Accident, Incident or Transaction: _____Chester_____

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __06/04/2019__   _____[signature]_____   __60643__
                     *Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

| A. | *Federal Question Cases:* | B. | *Diversity Jurisdiction Cases:* |
|---|---|---|---|
| ☐ 1. | Indemnity Contract, Marine Contract, and All Other Contracts | ☐ 1. | Insurance Contract and Other Contracts |
| ☐ 2. | FELA | ☐ 2. | Airplane Personal Injury |
| ☐ 3. | Jones Act-Personal Injury | ☐ 3. | Assault, Defamation |
| ☐ 4. | Antitrust | ☐ 4. | Marine Personal Injury |
| ☐ 5. | Patent | ☐ 5. | Motor Vehicle Personal Injury |
| ☐ 6. | Labor-Management Relations | ☐ 6. | Other Personal Injury *(Please specify):* _____ |
| ☐ 7. | Civil Rights | ☐ 7. | Products Liability |
| ☐ 8. | Habeas Corpus | ☐ 8. | Products Liability – Asbestos |
| ☐ 9. | Securities Act(s) Cases | ☐ 9. | All other Diversity Cases |
| ☐ 10. | Social Security Review Cases | | *(Please specify):* _____ |
| ☐ 11. | All other Federal Question Cases | | |
| | *(Please specify):* _____ | | |

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____Marc A. Weinberg_____, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: __06/04/2019__   _____[signature]_____   __60643__
                     *Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DEBORAH KNIGHT | : | |
| 289 Coldron Drive | : | **Complaint** |
| Oxford, PA 19363 | : | **Civil Action** |
| v. | : | **Jury of Eight (8) Demanded** |
| PUBLIC PARTNERSHIPS, LLC | : | |
| PO BOX 1108 | : | |
| Wilkes Barre, PA 18773 | : | |
| and | : | **NO.** |
| PUBLIC PARTNERSHIPS, LLC | : | |
| 40 Broad Street, Lobby 4 | : | |
| Boston, MA 02109 | : | |
| and | : | |
| PUBLIC PARTNERSHIPS, LLC | : | |
| c/o CT Corporation | : | |
| 2001 Market Street, 5th Floor | : | |
| Philadelphia, PA 19103 | : | |

## INTRODUCTION

This is a claim brought by Plaintiff, DEBORAH KNIGHT ("Plaintiff or Knight") against

Defendant, PUBLIC PARTNERSHIPS, LLC ("Defendant or Public Partnerships"), for violations

of the Fair Labor Standards Act of 1938 ("FSLA"), as amended, 29 U.S.C. § 201 *et seq*.,and

Pennsylvania Wage Payment and Collection Law, Act of 1961, P.L. 637, No. 329 ("Pa. Wage

and Hour") and in support thereof states and avers as follows:

## PARTIES

1.      Plaintiff, DEBORAH KNIGHT("Plaintiff or Knight") is an adult individual who

resides at 289 Coldron Drive, Oxford, PA 19363 and was at all times relevant hereto employed

by Defendant, PUBLIC PARTNERSHIPS, LLC ("Defendant or Public Partnerships").

2.      Defendant, PUBLIC PARTNERSHIPS, is a corporation, entity or business

organization operating at 1 Penn Boulevard, Philadelphia, PA 19144, and at all times relevant

hereto did business in the Commonwealth of Pennsylvania.

3.      Defendant, PUBLIC PARTNERSHIPS, is a corporation, entity or business

organization operating at the above-captioned addresses, and at all times relevant hereto did

business in the Commonwealth of Pennsylvania.


## JURISDICTION AND VENUE

4.      Subject matter jurisdiction is appropriate before this Court under Federal Question

Jurisdiction and Supplemental Jurisdiction, 28 U.S.C. §§ 1331,1337, and 1367.

5.      Venue is appropriate before this Court under 28 U.S.C. § 1391 (b) as Defendants

regularly conduct business within the Eastern District of Pennsylvania and all acts and omissions

which are the subject of Plaintiff's Complaint occurred therein.

6.      The Plaintiff has opted out of all class action matters related to this specific suit.

## FACTUAL AVERMENTS

7.      Plaintiff commenced employment with the Defendant as a home health aid for

Patricia L. Widdowson in or about August 1, 2016.

8.      Defendant acts as the payor of services provided to Patricia L. Widdowson in the

Commonwealth of Pennsylvania.

9.      Plaintiff provides non live-in home health care services to Ms. Widdowson that

includes but are not limited to providing care for bathing, companionship, wound care, dispense

medication, taking and reporting of vial signs, cooking, cleaning, dressing, driving, shopping and

the like.

10.     The Plaintiff provides care in part that is skilled in nature.

11.     As a non live-in home health-aid, Plaintiff is entitled to overtime wages under FLSA and Pa. Wage and Hour Laws.

12.     The Plaintiff was not paid hours for overtime from August 1, 2016 - March 9, 2019.

13.     Plaintiff worked in excess of 40 hours per week or 80 hours per two (2) week pay period.

14.     Upon information and belief, the Defendant who is required to provide proper and accurate payment to the Plaintiff, failed to pay overtime for any time worked in excess of 40 hours per week.

15.     The Plaintiff reported her hours properly for each week of work.

16.     Plaintiff remains in employment with the Defendant.

17.     Overtime was not paid regardless of the fact that all hours and overtime were reported properly.

## COUNT I
### Violation of the FSLA for Unpaid Overtime

18.     Plaintiff incorporates the preceding paragraphs as if set more fully at length herein.

19.     At all times relevant hereto, Defendant engaged in interstate commerce and/or the production of goods for commerce and home health-aids are covered under the FSLA, within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).

20.     At all times relevant, the Defendant employed Plaintiff within the meaning of the FLSA.

21.    The FLSA requires covered employers to properly compensate covered employees for every hour worked in a workweek. See 29 U.S.C. § 206(b).

22.    The FLSA requires covered employers to pay covered employees overtime compensation at a rate "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in a workweek. See 29 U.S.C. § 207(a)(1).

23.    Throughout the relevant period, Plaintiff and other employees who were similarly situated were non-exempt covered employees entitled to the protections of the FLSA.

24.    Throughout the relevant period, the Defendant were covered employers, subject to the provisions of the FLSA, and were not exempt from providing FLSA overtime benefits for any reason.

25.    The Defendant has a policy and practice of refusing to pay overtime compensation to Plaintiff and failure to pay overtime compensation at a rate not less than one and one-half times the rate at which they are employed for work performed beyond the 40 hours workweek, is a violation of the Fair Labor Standards Act of 1938, in particular 29 U.S.C. §§ 206, 207.

26.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a) because the Defendant violated Plaintiff's rights as an employee even after Plaintiff brought this to their attention on multiple occasions.

27.    Due to the Defendant's FLSA violations, Plaintiff is entitled to recover from Defendant their unpaid overtime compensation, an additional amount equal to liquidated damages, additional liquidated damages for unreasonably delayed payment of wages, reasonable attorneys' fees and costs of this action, pursuant to 29 U.S.C. § 216(b).

28.    Plaintiff was retaliated against and terminated for demanding payment of the overtime hours that she worked, reported and was entitled to be paid for.

WHEREFORE, Plaintiff demands judgment against the Defendant and respectfully requests the following relief:

a.      Damages, including but not limited to interest, liquidated damages, and counsel fees in the amounts due Plaintiff, and others similarly situated, for overtime compensation;

b.      Equitable relief in the form of an order directing the Defendant to comply with the Fair Labor Standards Act and Pennsylvania Wage Payment and Collection Law; and

c.      Such other and further relief as this Court deems proper.

## COUNT II
**Violation of The Pennsylvania Wage Payment and Collection Law,**
**Act of 1961, P.L. 637, No. 329**

29.      Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

30.      At all times relevant, the Defendant employed Plaintiff for work weeks of forty (40) hours to which Plaintiff performed said duties in a timely manner to the best of his abilities.

31.      At all times relevant, Plaintiff was an employee of the Defendant and entitled to pay on a regular basis.

32.      Defendants had knowledge of the hours that Plaintiff worked during his tenure.

33.      Defendants deprived the Plaintiff of pay for the hours worked as enumerated *supra.*

34.      Defendants have violated the Pennsylvania Wage Payment and Collection Law,

Act of 1961, P.L. 637, No. 329 by failing to make timely payments in the form of a proper pay check for the hours properly worked by the Plaintiff on the payday as required.

35.     The Defendant set the pay days for the Plaintiff at the time of hiring.

36.     None of the wages claimed are considered fringe benefits, but rather hourly wages due and owed.

WHEREFORE, Plaintiff demands judgment against the Defendant and respectfully requests the following relief:

a.     Lost wages, as well as compensatory and back pay damages to the fullest extent permitted under state law;

b.     Litigation costs, expenses, and attorney's fees to the fullest extent permitted under state law;

c.     Civil penalties as provided under the law;

d.     Treble damages as provided under the law;

e.     Interest for monies not paid; and

f.     Such other and further relief as this Court deems just and proper.

Respectfully submitted,

**SAFFREN & WEINBERG**

BY:_____
**MARC A. WEINBERG, ESQUIRE**
**815 Greenwood Avenue, Suite 22**
**Jenkintown, PA 19046**
**(215) 576-0100**

**Dated: June 5, 2019**

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RALPH TALARICO, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>  v.<br><br>PUBLIC PARTNERSHIPS, LLC, d/b/a PCG PUBLIC PARTNERSHIPS,<br><br>       Defendant. | CIVIL ACTION<br>NO. 17-2165 |

## ORDER

**AND NOW**, this   2nd   day of October, 2019, upon review of class Plaintiff, Deborah Knight's Motion to Voluntarily Dismiss (Docket No. 188) her class-action claims without prejudice pursuant to F.R.C.P. 41(a)(2), and with no opposition thereto, it is hereby **ORDERED** that Plaintiff's Motion is **GRANTED.** It is further **ORDERED** that Deborah Knight is hereby removed from the class action in this matter.

**BY THE COURT:**


**/s/ Jeffrey L. Schmehl**
Jeffrey L. Schmehl, J.

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RALPH TALARICO, individually and on behalf
Of all others similarly situated,

        Plaintiff,

    v.

PUBLIC PARTNERSHIPS, LLC, d/b/a PCG,
PUBLIC PARTNERSHIPS,

        Defendant.

CIVIL ACTION
NO. 17-2165

## MEMORANDUM

**Schmehl, J. /s/ JLS**                            **January 28, 2020**

      Before the Court is the motion for summary judgment of Defendant Public

Partnerships, LLC d/b/a PCG Public Partnerships ("PPL"). Plaintiff Ralph Talarico

("Plaintiff" or "Talarico") has opposed the motion, and PPL has filed a reply. Having read

the parties' briefing and after oral argument on the issue, I find that no reasonable jury

could conclude that Plaintiff was an employee of PPL. Accordingly, I will grant PPL's

Motion for Summary Judgment and dismiss this action in its entirety.

## I.    INTRODUCTION

      Plaintiff filed this Collective Action and Class Action Complaint alleging

violations of the Fair Labor Standards Act (29 U.S.C. § 201, *et seq.*) ("FLSA"), the

Pennsylvania Minimum Wage Act of 1968 (43 P.S. 333.101 *et seq.*) ("MWA") and the

Pennsylvania Wage Payment and Collection Law (43 P.S. 260.1 *et seq.*) ("WPCL").

Specifically, Talarico alleges that PPL failed to pay him and thousands of other similarly

situated employees overtime wages to which they are entitled for work performed as direct

care workers in the Federal Medicaid program. PPL contends that it is not Plaintiff's employer, thus, is not in violation of any of the above-referenced statutes.

## II.    **FACTUAL BACKGROUND**

Plaintiff and other similarly situated individuals are thousands of workers who performed services under PPL's contract with Pennsylvania relating to a federal Medicaid program called the Home and Community-Based Services ("HCBS") waiver program. The HCBS waiver program is a Medicaid program administered at the federal level by the Centers for Medicare and Medicaid Services ("CMS") under §1915(c) of the Social Security Act, 42 U.S.C. § 1396n, and in Pennsylvania by the Department of Human Services Office of Long Term Living ("OLTL"). 55 Pa. Code § 52.1. OLTL applied to CMS for a waiver to provide an array of options under the HCBS waiver program umbrella. 42 U.S.C. § 1396n; 42 C.F.R. § 441.301. (JSOF at ¶ 2.) CMS approved the application and OLTL now administers the options in the Commonwealth. 52 Pa. Code § 52.1. One specific waiver program administered by OLTL, the Independence Waiver Program, authorizes "Self-Directed Personal Assistance Services" to Participant-Employers ("PEs") who are between the ages of 18 and 60 with physical disabilities. 55 Pa. Code § 52.3.[1] OLTL's Application for a § 1915(c) Home and Community-Based Services Waiver describes its administration of the HCBS waiver program in detail. (*Id.* at ¶ 3.)

The stated purpose of the waiver program is to permit a state to furnish "services that assist Medicaid beneficiaries to live in the community and avoid institutionalization." (*Id.* at ¶ 4.) A PE's enrollment in the HCBS waiver program begins when an

---

[1] Self-Directed Personal Assistance Services are "designed to allow individuals . . . to exercise decision-making authority in identifying, accessing, managing and purchasing" the resources they need. 42 C.F.R. § 441.450(b).

2

independent enrollment broker (a third party contracted by the Commonwealth) does an intake to determine if a Participant is eligible for enrollment into the HCBS waiver program. (JSOF, ¶ 5.) After OLTL approves the PE for the program, he or she works with a third-party Service Coordinator to prepare a Service Plan and Service Budget. (*Id.*, at ¶ 6.) The Service Coordinator "provides ongoing support and monitoring of the decisions that a participant makes when hiring and firing", "work[s] with the participant to create their service plan", and "work[s] with the consumer to determine what are the needs of this consumer." (*Id.*, at ¶ 7.)

When the Service Coordinator meets with the PE, he or she conducts an intake which "is basically an overview of the program with the [Participant] in their home and creation of their plan of care, which would include services that they are in need of." The Service Plan, created by the Service Coordinator with input from the PE, dictates how many units of service a PE is permitted to receive. (*Id.,* at ¶ 8.) If a PE requires more than 40 hours a week of services, such overtime would need to be authorized in the Service Plan. Skovera Dep., pp. 123-124. OLTL then reviews the Service Plan submitted by the Service Coordinator, including the number of hours for which service is authorized, and approves or denies it. (*Id.*, at ¶ 9.) If the PE's needs change, he or she must work with the Service Coordinator to amend the Service Plan. (*Id.*, at ¶ 10.) PPL is not involved in the creation of the Service Plan, nor is it involved in determining the number of units a PE receives in the Service Plan. Skovera Dep., pp. 105, 121-122; LZ Dep., pp. 22- 23, 55-56; EW Dep., p. 15; MJ Dep., pp. 23-24;LZ Dep., pp. 22, 55-56. PPL is informed of the eligibility of the PE and the allowable hours of service. Stewart Decl., ¶ 18.

After CMS approved OLTL's application, OLTL opted to implement the Self-Directed Services option, and describes the self-directed program as follows:

> All participants in the Independence [W]aiver [Program] have the right to make decisions about and self-direct their own waiver services and may choose to hire and manage staff using Employer Authority. Under Employer Authority, the participant serves as the common-law employer and is responsible for hiring, firing, training, supervising and scheduling their support workers.

*See* OLTL Application, ECF No. 158, Exh. C, p. 169. Every participant has the option to act as the employer under the Self-Directed Services option or to have an agency act as the employer and handle all issues relating to the participant's services. (Dep. of Julie Skovera, pp. 18-20.) There is no dispute that the latter model, called the agency model, is not at issue in this case. Rather, Plaintiff takes issue with the Self-Directed Services option.

CMS regulations state that Medicaid Participant-Employers who elect the Self-Directed Services Option have the authority to recruit workers, hire and fire workers, train workers, specify worker qualifications, determine worker duties, schedule workers, supervise workers, evaluate worker performance, determine the amount paid for a service, and schedule when services are provided. 42 C.F.R. § 441.450 (b)(1)-(12). CMS regulations also require that the Self-Directed Services Option provide for the development of a "Service Plan," which is a "document that specifies the services and supports (regardless of funding source) that are to be furnished to meet the needs of a participant in the self-directed [Personal Assistance Services] option and to assist the participant to direct the [Personal Assistance Services] and to remain in the community." *Id.* §§ 441.450(c), 441.468. The

4

regulations also provide for a "Service Budget," which is "an amount of funds that is under the control and direction of a participant." *Id.* § 441.450(c).

When the Service Coordinator meets with the participant, it is explained to the PE that it is their "responsibility, as the employer, to be reviewing the timesheets, to make sure they are accurate and that if they are signing them, they are signing off saying these services were provided in accordance with the hours that were authorized on their [Service Plan]." Skovera Dep., p. 54. Service Coordinators also monitor the Service Plan once it is implemented. *Id.*, p. 92.

CMS regulations authorize states to provide financial management services on behalf of PEs who elect the Self-Directed Services option. These services include, *inter alia*, payroll processing and the collection and disbursement of withholding taxes. *Id.* § 441.484(a)(2). Further, PPL's Grant Agreement states that "Federal law requires individuals receiving [Personal Directed Services] through the Consumer Directed Model to utilize the services of a Vendor Fiscal/Employer Agent ("VF/EA") which serves as a fiscal intermediary and provides Financial Management Services" to individuals who qualify for home care under HCBS waiver programs. Grant Agmt, ECF No. 158, Exh. D. PEs are required to use PPL if they want to obtain home-care services through the Participant Directed Services Program; they cannot select a different agent or operate without an agent. Horvath Dep., p. 109; MJ Dep., p. 87; DS Dep. p. 51; LZ Dep., pp. 111-112. PPL has Enrollment Specialists who train PEs either in-person or telephonically, and work with service coordinators to provide training to PEs in need of additional employer skills training. *See* Waiver App. at 24-25, 171; Grant Agreement at 759; Stewart Dep., pp. 51, 57, 118.

5

When a Direct Care Worker ("DCW") goes to work for a PE under this program, PPL provides the DCW with an application that must be completed, as well as the DCW Agreement that must be signed; PPL also provides an instruction manual and a customer service helpline for questions associated with the application and agreement. *See* Stewart Dep., pp. 82, 129-130, 126; Santiago Dep., 141. After this initial paperwork is received by PPL, it verifies each DCW's citizenship status and completes a criminal background check and child abuse clearance. Waiver App. at 24-25; Stewart Dep., pp. 154-155. PPL also ensures that DCWs are not on the state's List of Excluded Individuals and Entities; if a DCW is on this list, they are not permitted to be paid as part of this waiver program. *See* New DCW Waiver Packet at 1045; Stewart Dep. pp. 134-135, 143, 312-314; LZ Dep., pp. 138-39; MJ Dep. p. 120; Lang Dep., pp. 102-103. PPL will not pay a DCW for any work performed before all checks are completed. *See* Stewart Dep., p. 323. Once all the approval steps are completed, PPL gives the "good to go," and authorizes the DCW to begin working. Stewart Decl. at C2-4; Stewart Dep., pp. 59, 79, 80, 86-87.

PPL pays DCWs directly and is later reimbursed by the state for those wages. Stewart Dep., pp. 234-236. PPL "is responsible for informing the participant of the established rate" for the services that he or she receives. Waiver App. at 213. PPL calculates the maximum wage rate a PE can pay a DCW and regularly recalculates this rate as the PE's insurance rates change. Stewart Dep., pp. 166, 174, 176, 182. PPL provides guidance to PEs about selecting wage rates through written materials. PPL Handbook at 1267, Stewart Dep., pp. 176-178.

DCWs report their time to PPL using timesheets or an online portal. Once PPL receives the timesheets, it reviews and validates them "against the participant's eligibility and service authorization information imported to [PPL's] web portal." Waiver App. at 214; Stewart Dep., pp. 84, 202-205, 210-213, 224, 237, 256-257; JSOF at ¶ 17. PPL tracks time worked by the DCWs to ensure compliance with the number of hours permitted in the PE's Individual Service Plan. Waiver App. at 159; Stewart Dep., pp. 212-213; JSOF at ¶ 18. PPL also reviews timesheets to ensure there is no overlap with time reported from each DCW and any other PE or for that PE and any other DCWs. Stewart Dep., pp. 213, 215-218; Horvath Dep., pp. 89, 92, 96-97; Talarico Dep., pp. 224-225, 213, 215-218.

PPL handles all payroll functions and unemployment and tax withholdings. EW Dep., p. 21. Payroll checks issued to the DCWs bear PPL's name and logo on the check, and PPL also issues W-2 forms listing the employer as "Public Partnerships for PA HH ER Agent for [PE]." Stewart Decl.; Talarico Dep., pp. 146, 149, 151, 171, 186.

PPL plays no role in disciplining any DCW (JSOF at ¶ 12) and uses standardized paperwork to enroll PEs, who must complete the paperwork before PPL will pay their DCWs. (*Id.*, at ¶ 13.) PPL's web portal will provide reports that the State and the Participant's service coordinator can access, which will provide certain information about the PEs use of services and whether timesheets have been submitted for the PEs care. PPL provides an instruction manual and customer service helpline for questions about these applications, agreements, and other forms. (JSOF, ¶ 14.)

All PEs signed a Direct Care Worker Agreement ("DCW Agreement")

with their DCWs that acknowledged that the DCW was employed by the PE and

not by PPL. Stewart Dec., Ex. C. pp. 2-4, 24-16; Ex. D., pp. 2-4, 14-16, 23-25; Ex.

E, pp. 2-4, 14-16; Ex. F. pp. 2-4, 14-16, Simms Dep. pp. 60-63; Lang Dep.,

Santiago Dep., pp. 101-102. On this DCW Agreement, the PE was designated as the

"Common Law Employer." *Id.* Every DCW Agreement contains the following

language:

> 14.    I understand and acknowledge that VF/EA [PPL] is not my
> employer.
>
> 15.    I understand that the participant or their appointed representative is
> my employer. My employer is not VF/EA [PPL], OLTL, or any other
> entity involved with the PDS Program.
>
> 16.    I understand that my paychecks will be processed by the Vendor
> Fiscal/Employer Agent (VF/EA) [PPL]. The VF/EA [PPL] is considered a
> Financial Management Service (FMS) Organization. I understand that the
> VF/EA [PPL] is not authorized to pay for any service not approved and
> authorized in the ISP or any request that exceeds the participant's budget
> and funds for the PDS program as stated in the ISP.

Stewart Decl., Ex. C, pp. 3, 15; Ex. D, pp. 3, 15, 24; Ex. E, pp. 3, 15; Ex. F, pp. 3.

15; Simms Dep., pp. 60-64; Lang Dep., Ex. 3, Ex. 5; Santiago Dep., pp. 101-102.

Numerous other forms completed by the DCWs listed the PEs as their

employers. PEs also signed a Common Law Employer Agreement ("CLE

Agreement") which states that the PEs accept the responsibility for managing the

services provided to them by the DCW and that they are the "legal employer of the

qualified Direct Care Workers hired to provide" the services identified in their

service plans. Stewart Decl. ¶¶ 30, 50; Ex. D, pp. 17-19; Ex. F, pp. 17-19; Simms

Dep. Ex. 8, Lang Dep., Ex. 4.

8

PPL completes a criminal history background check on all DCWs that are hired. The Criminal History Background Check Participant/CLE Acceptance of Responsibility Form states:

> Criminal history background checks are mandatory but a participant may still choose to hire a direct care worker even if a worker is found to have a criminal history
>
> . . .
>
> As the employer, I have the right to choose to hire a direct care worker with a criminal record. In doing so, I accept responsibility for my decision and potential consequences of my decision. I choose to hire the below named Direct Care Worker (DCW).

*See, e.g.* Simms Dep., Exh. 7. Further, the DCW Agreement states that the results of the criminal background check are provided to the PE, at which time the PE can still move forward and choose to hire the DCW. Stewart Decl, Ex. C, ¶ 59. LZ, a Participant-Employer, testified that when a background check came back with findings of criminal convictions for DCWs she wanted to hire, it was her "personal choice whether or not to move forward or to cease working with that individual." LZ Dep., pp. 50-51.

## III.   LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. Proc. 56(c). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is

"genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Auth. of N.Y. and N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) (*citing Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

## IV.   DISCUSSION

Plaintiff filed this collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 210, *et seq*, the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.103, *et seq*, and the Pennsylvania Wage Payment and Collection Law, 43 P.S. §§ 260.1, *et seq*. PPL moves for summary judgment on all claims brought by Plaintiff, arguing that Plaintiff's claims must fail because PPL is not and has never been Plaintiff's joint employer.[2] For the reasons set forth below, I find that PPL is not the joint employer of Plaintiff. Accordingly, Defendant's Motion is granted and Plaintiff's Amended Complaint is dismissed.

### A.  FLSA CLAIMS

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and an "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1). The FLSA prohibits an "employer" from failing to pay overtime compensation. 29 U.S.C. § 207(a)(1). "When

---

[2] Plaintiff does not argue that PPL was his sole employer.

10

determining whether someone is an employee under the FLSA, the economic reality rather than the technical concepts is to be the test of employment." *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 148 (3d Cir. 2014) (quoting *In re Enterprise Rent-A-Car Wage & Hour Emp't Practices Litig.*, 683 F.3d 462, 467-68 (3d Cir. 2012)) (internal citations omitted). "A 'single individual may stand in the relation of an employee to two or more employers at the same time under the [FLSA].'" *In re Enterprise*, 683 F.3d at 467 (quoting 29 C.F.R. § 791.2(a)). "A determination as to whether a defendant is a joint employer 'must be based on a consideration of the total employment situation and the economic realities of the work relationship.'" *Id.* at 469 (quoting *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470-71 (9th Cir. 1983)).

In order to determine whether a defendant is a joint employer under the FLSA, courts apply the *Enterprise* test. The *Enterprise* test examines: 1) the alleged employer's authority to hire and fire the relevant employees; 2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment; compensation, benefits, and work schedules, including the rate and method of payment; 3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and 4) the alleged employer's actual control of employee records, such as payroll, insurance or taxes. *Enterprise*, 683 F.3d at 468-69. At summary judgment, if no reasonable juror could conclude a joint employer relationship existed, the defendant is entitled to summary judgment, even if some of the factors do not favor that defendant. *Id.* at 471.

I will examine each of these factors in turn as it applies to the instant set of facts.

### 1.    Does PPL Have Authority to Hire and Fire?

The first factor of the *Enterprise* test examines whether the alleged employer has the power to hire and fire employees. In the instant matter, it is undisputed that PPL does not locate, interview, or recruit DCWs into the program. However, Plaintiff sets forth numerous facts in support of his argument that PPL has the power to hire DCWs. Plaintiff points out that PPL requires DCWs to complete an application, meet certain qualifications, undergo a background check and sign a DCW Agreement. Additionally, Plaintiff argues that although PEs can decide who they want to hire as a DCW, that choice is subject to PPL's approval, and no DCW can be paid until PPL gives the "good to go." Plaintiff further focuses on the fact PPL can bar a PE from hiring a DCW who appears on Pennsylvania's List of Excluded Individuals and Entities as evidence of PPL's alleged power to hire DCWs.

First, I find Plaintiff's argument that DCWs are required by PPL to complete certain documentation before a PE can begin working to be evidence of PPL's control over the hiring process to be unpersuasive. As discussed above, PPL has a contract with Pennsylvania to administer the Self-Directed Services Option and that contract requires PPL to use certain paperwork. PPL does not independently decide what forms need to be completed, nor does it develop those forms. Rather, the state directs PPL in this regard.

Next, as to the fact that PPL performs a criminal background check on all DCWs before they can begin work, the fact that PEs can still opt to hire a DCW following a positive criminal background check is fatal to Plaintiff's argument. The Criminal Background Check Participant/CLE Acceptance of Responsibility Form states that "[c]riminal background checks are mandatory but a participant may still choose to hire a

direct care worker even if a worker is found to have a criminal history." It further states that "[a]s the employer, I have the right to choose to hire a direct care worker with a criminal record." Simms Dep., Exh. 7. Further, section 2 of the DCW Agreement states that background results are provided to the PE, at which point the PE can still exercise his or her discretion and decide to hire the DCW. Stewart Decl, Exh. 3, p. 37 at ¶ 59. PPL cannot forbid a PE from hiring a DCW with a criminal record, and PPL only performs a criminal background check once a PE determines that he or she wants to hire a DCW. As further evidence of this, both LZ, a PE, and DCW Simms testified that in their experience, a PE could choose to hire a DCW who had a criminal background, with no input from PPL. Although PPL reviews DCWs criminal background check, the ultimate hiring decision still rests with the PE.

Further, Plaintiff argues that PPL has control over hiring because a DCW cannot work or be paid until they get PPL's "good to go." However, I find this argument to be misleading. It is not true that a DCW cannot work or be paid *at all* without PPL's ok. Rather, a DCW cannot work or be paid *under the waiver program at issue* in this case until the program requirements are met. Nothing prevents a DCW from working and being paid by the PE personally prior to receiving the "good to go" from PPL. New DCW Packet at 1045, ¶ 15. DCWs simply cannot be paid with Medicaid funds from this program until PPL gives the go ahead.

The argument that PPL can bar a PE from hiring or require the firing of a DCW who appears on Pennsylvania's List of Excluded Individuals and Entities is also unpersuasive. The exclusion of potential DCWs who are found on this list is required by the Commonwealth pursuant to the relevant waiver program; this is not a policy of PPL.

Similarly, PPL's role in reviewing DCW timesheets and determining whether they should be paid is not evidence of an alleged employer relationship. The PEs are the ones who ultimately decide which DCW hours are appropriate for payment. PPL merely reviews timesheets to make sure no hours are double-counted, etc, and processes the checks for the PEs.

Plaintiff also argues that the DCWs are "economically dependent upon PPL" and that the PEs "do not have money of their own to pay workers." ECF No. 165, p. 23. However, this characterization of the relationship between PPL and the DCWs is misleading. PPL is not distributing money to the DCWs from its own funds; rather, PPL is distributing Medicaid money in accordance with the waiver program and the PEs decisions made with the Service Coordinator as to the extent of services necessary. If anything, the DCWs are "economically dependent" upon the government which provides the Medicaid funds in question.

As to PPL's ability to fire the DCWs, there has been no evidence presented that PPL is involved in that process in any way. Multiple PEs testified that they have the sole discretion and ability to terminate their DCWs. In fact, DCWs Talarico, Santiago and Simms were all terminated by their PEs and testified that PPL had no role in their firings. Further, PPL does not handle DCW disciplinary issues. There is absolutely no evidence that PPL has any ability to participate in the firing of DCWs.

A review of the above shows that PPL clearly has no control over hiring and firing DCWs. Accordingly, this *Enterprise* factor weighs against a finding of joint employment in this matter. *See Yue Yu v. McGrath*, 597 F. App'x 62, 65-66 (3d Cir. 2014) (Plaintiff was not an employee of BMS because BMS "did not have the authority to hire or

fire" her); *see also Garcia v. Nunn*, 2015 WL 5585451, at * 4 (E.D. Pa. Sept. 23, 2015) (dismissing FLSA claims where "there is no mention in the amended complaint that Defendant Weis had the authority to hire and fire the plaintiff employees.")

### 2. Does PPL Have the Authority to Set Work Rules and Assignments and Set the Conditions of Employment Such as Compensation, Benefits or Work Schedules?

The second prong of the *Enterprise* test examines whether the purported employer sets work rules, makes assignments and sets conditions of employment such as compensation, benefits or work schedules. Plaintiff argues that PPL establishes work rules through the DCW Agreement, exercises control over DCW compensation, benefits and hours, enforces a limit on the number of hours worked by DCWs, and sets overtime rates. After a thorough examination of the record, I find that this *Enterprise* factor also weighs against a finding of joint employment.

The PE, working in conjunction with his or her Service Coordinator, determines what services are needed from a DCW and documents those services in an individual Service Plan. Stewart Decl., ¶¶ 9, 14-15; Skovera Dep., p. 91. There is no dispute that PPL does not participate in the creation of the service plan. Stewart Decl., ¶¶ 14-15; LZ Dep., pp. 17-20, 22-23; EW Dep., p. 15; MJ Dep., pp. 23-24. Rather, PPL is informed of the total amount of hours permitted under the service plan so that it may properly determine DCW eligibility and payment. In addition, DCW schedules are determined by the PEs, not PPL. EW Dep., p. 30; LZ Dep., pp. 96-97; MJ Dep., pp. 30-33; Santiago Dep., p. 115; Simms Dep., p. 100; Talarico Dep., p. 67. Clearly, PPL has no input as to hours worked by the DCWs, or the job assignment of any DCW.

Plaintiff makes much of the rate of pay issue, claiming that PPL "gives participants substantial guidance" on pay rates, must approve any rate or rate change before it goes into effect, and enforces limits on pay rates. ECF No. 165, p. 29. While these facts may be true, this does not mean that PPL sets the compensation rate for the DCWs. Rather, the PEs themselves decide how much to pay DCWs subject to the maximum billable rate established in the Service Budget developed by the PE and their Service Coordinator, not by PPL. Stewart Decl., ¶¶ 14-15, 58; LZ Dep., pp. 80, 82-83, 88, 97; MJ Dep., pp. 31-32, 57, 71-73; Lang Dep., pp. 58, 91; Santiago Dep., pp. 38-39; 59. OLTL provides PPL with the maximum rate for a unit of service provided by a DCW. Stewart Decl., ¶ 58; LZ Dep., 80, 82-83, 88, 97. The PEs could pay from their budgeted hours any wage up to the maximum wage OLTL allows for the region in which the PEs reside, so long as it also met the minimum wage standard. Stewart Decl., ¶ 58; LZ Dep., pp. 80, 82-83, 88, 97. PPL does not develop or set this pay range. Rather, the range is calculated based upon the program requirements.

Despite providing PEs with a range of pay rates, approving rate changes and enforcing limits on pay rates, PPL is not actually *setting* the compensation rate. Rather, it is providing PEs with information and ranges that they are permitted to pay DCWs within the guidelines of the relevant waiver program. This is not setting pay rates. The PEs are the ones who select the rate of pay for their own DCWs within the program limits provided by PPL. *Cf Hardgers-Powell v. Angels in Your Home, LLC*, 2019 WL 409276 (W.D.N.Y. Feb. 1, 2019) (home care agency was held to be employer of plaintiffs where company screened employees and set wage rates).

Similarly, PPL has no part in determining the need for overtime. The decision as to the number of hours a DCW can work for a PE, whether more or less than 40, is set forth in the service plan, after being determined by the PE and the Service Coordinator. Stewart Decl., ¶ 14; Skovera Dep., pp. 123-125.

Plaintiff claims that PPL provides DCWs with Workers' Compensation insurance, but this is incorrect. PPL provides no benefits to DCWs. Stewart Decl., ¶¶ 58, 63. Rather, PPL assists PEs in paying for workers compensation insurance through their Medicare funds. Stewart Decl., Ex. C, pp. 17-26; Ex. D, pp. 27-40; Ex. E, pp. 17-33; Ex. F, p. 20-22. PPL merely facilitates procurement of the policy in question and any workers compensation policy that exists is in the name of the PE. *Id.*

In summary, I find that all the evidence presented by Plaintiff fails to satisfy the second factor of the *Enterprise* test as to PPL's alleged joint employer status. PPL does not tell PEs the amount that they should pay DCWs, does not tell PEs how many hours a DCW can work and has no input as to the necessity of overtime.

### 3. Does PPL Have any Involvement in Day-to-Day Employee Supervision?

Plaintiff cannot put forth any evidence to support this factor of the *Enterprise* test, as PPL clearly has no involvement in the day to day supervision of the DCWs. All functions of supervision, evaluation, and discipline are the sole responsibility of the PEs. Stewart Decl., ¶¶ 10, 61; Simms Dep., Ex. 8; Lang Dep., Ex. 4. PPL never visited PEs homes to observe the DCWs and never monitored the quality of services that were being provided by the DCWs. Stewart Decl., ¶ 61; EW Dep., p. 15; Talarico Dep., pp. 76-77. PPL does not manage the DCWs on a daily basis. *See McKenna v. Healthease, Inc.*, 2013 WL 1702639, at * 7-8 (E.D. Pa. Apr. 19, 2013) (defendant was not a joint employer of

the plaintiff where it "did not place any conditions on her employment, nor did it schedule or evaluate her performance.") Accordingly, Plaintiff also fails to meet this factor of the *Enterprise* test for joint employment.

### 4. Does PPL Control Employee Records?

Lastly, under the *Enterprise* test, courts examine whether the alleged employer controls employee records. PPL keeps copies of documents signed by the PEs and DCWs, proofs of payment made to DCWs and DCW timesheets. Stewart Decl., Exs. C, D, E, F. Plaintiff argues that PPL "maintain[s] all employment records," but presents no real evidence in support of this argument, other than the fact that PPL produced "complete files" for each DCW and payroll data, while none of the DCWs had those records in their possession. Plaintiff fails to elaborate on exactly what those "complete files" contained, but there is no evidence that PPL maintained any employee records outside of the payroll records that it contracted with the Commonwealth to handle. Plaintiff presented no evidence that PPL maintained employee performance reviews, employee disciplinary records or the like. I find this fourth factor to be neutral as to the analysis of joint employment, as PPL does maintain *some* employee payroll records, but there is no evidence that it maintains any other types of employment records regarding the DCWs.

After a thorough review of the record in this matter and an analysis of the four *Enterprise* factors, I conclude that no reasonable jury could find that Plaintiff was an employee of PPL. This conclusion is further supported by all of the program documents in this matter, which all state that the PE is the employer of the DCW, not PPL. See DCW Agreement, ¶¶ 17-19; Santiago Dep., Exs 12-16. All evidence points to the conclusion that PPL is merely a fiscal agent for the PEs for payroll purposes only, as contemplated in

PPL's contract with OLTL. Accordingly, Defendant's motion for summary judgment is granted and Plaintiff's FLSA claims are dismissed.

## B. PENNSYLVANIA MINIMUM WAGE ACT

Plaintiff also alleged that PPL committed violations of the Pennsylvania Minimum Wage Act. As stated by Plaintiff, "the parties agree that Pennsylvania follows the FLSA in many respects, including determining the existence of an employer or joint employer relationship for the Pennsylvania Minimum Wage Act." ECF No. 165, p. 39; see *Com., Dept. of Labor and Industry, Bureau of Labor Law Compliance v. Stuber*, 822 A.2d 870, 873 (Pa. Commw. Ct. 2003), *order aff'd*, 859 A.2d 1253 (Pa. 2004). As discussed above, our finding is that PPL is not Plaintiff's employer under the economic realities test contained in the FLSA. Therefore, PPL is also not Plaintiff's employer under the Pennsylvania Minimum Wage Act and Plaintiff's MWA claims are dismissed.

## C. PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW

To recover under the WPCL, a plaintiff may seek unpaid wages if a contract or agreement entitles him to wages, or if a separate statute requires certain wages to be paid. Plaintiff alleges that he has an implied contract with PPL as his employer, which creates a factual issue that will survive summary judgment. This argument fails because Plaintiff has presented no evidence whatsoever that supports the existence of an implied contract with PPL.

Plaintiff also argues that some courts have recently held that a plaintiff may use the WPCL to enforce their rights to recover unpaid wages owed to them under another statute such as the FLSA without a written contract. Accordingly, Plaintiff argues that his WPCL claims against PPL are appropriate despite the lack of a contract with PPL. This argument

must fail, as several courts in this district have found that "a contractual obligation remains necessary for a WPCL claim." *Drummond v. Herr Foods, Inc.*, 2014 WL 80729, at *2-3 (E.D. Pa. Jan. 9, 2014); *see also Reyes v. XPO Last Mile, Inc.*, 2016 WL 4063454, at *2 (E.D. Pa. July 29, 2016). Accordingly, as no contract exists between Plaintiff and PPL, the WPCL claim must be dismissed.

## V.   **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Amended Complaint is dismissed in its entirety.