IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBORAH KNIGHT | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 19-2461 |
| PUBLIC PARTNERSHIPS, LLC | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                         **OCTOBER 7, 2021**

      Plaintiff Deborah Knight asserts claims against Defendant Public Partnerships, LLC ("PPL" or "Defendant"), under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, et seq. and the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 Pa. Stat. and Cons. Stat. Ann. §§ 260.1-260.45. She alleges that she is entitled to overtime pay. Plaintiff was a member in a putative class action which remains pending before another judge in the Eastern District of Pennsylvania. *See Talarico v. Public Partnerships, LLC*, No. 17-2165 (E.D. Pa.). She sought and was granted voluntary dismissal of her claims from the class action without prejudice and now asserts those same claims in this case. Defendant moves for summary judgment (ECF No. 51), contending that it is not subject to liability because it is not a "joint employer." For the reasons set forth below, the Motion will be denied.

**I.     BACKGROUND**[1]

      Plaintiff is a Direct Care Worker ("DCW") caring for her mother, PW, as part of the Home and Community-Based Services ("HCBS") waiver program. The HCBS waiver program is a Medicaid program administered federally by the Centers for Medicare and Medicaid

---

[1] We view the facts and reasonable inferences therefrom in the light most favorable to Plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Services ("CMS") under §1915(c) of the Social Security Act, 42 U.S.C. § 1396n, and in Pennsylvania by the Department of Human Services Office of Long Term Living ("OLTL").

OLTL filed a waiver application with CMS to provide a number of options under the HCBS waiver program umbrella. 42 U.S.C. § 1396n; 42 C.F.R. § 441.301.  OLTL's waiver application to provide home and community-based services included that the Fiscal Employer/Agent ("F/EA"), here the Defendant, PPL, must "[p]rovide orientation and skills training" to Participant-Employers, or "PEs."  (OLTL Waiver Application at 24-25, 171, Def.'s Ex. D, ECF No. 52-4.)  CMS granted the waiver and OLTL presently administers the options within the Commonwealth to date.  52 Pa. Code § 52.1.

A more extensive background is provided in a related class action of which Plaintiff was a class member until she voluntarily dismissed her claims in that matter and was removed from the class.  (*See Talarico v. Public Partnerships, LLC*, No. 17-2165 (E.D. Pa.), ECF Nos. 188, 189.)  In *Talarico*, the district court initially granted summary judgment to PPL.  (*Id.*, ECF Nos. 202, 203).  Plaintiffs appealed and the Third Circuit reversed and remanded, finding that there was a genuine issue of material fact as to whether PPL was a joint employer.  *See Talarico v. Public Partnerships, LLC*, 837 F. App'x 81, 82 (3d Cir. 2020).

Plaintiff Deborah Knight, like the class plaintiffs in *Talarico*, was a DCW under the Independence Waiver Program administered by OLTL.  This program offers "Self-Directed Personal Assistant Services" to Participant-Employers ("PEs") between the ages of 18 and 60 who have physical disabilities.  55 Pa. Code § 52.3; (*see generally* OLTL Waiver Application). PEs elect whether to engage in the Self-Directed Services option or the "agency model."  The parties agree that Plaintiff's mother, PW, elected the Self-Directed Services Model.

CMS regulations require that the Self-Directed Services option has a "Service Plan," or "document that specifies the services and supports (regardless of funding source) that are furnished to meet the needs of a participant in the self-directed [Personal Assistance Services] option and to assist the participant to direct the [Personal Assistant Services] and to remain in the community." 42 C.F.R. §§ 441.450(c), 41.468. There is also a "Service Budget," or an "amount of funds that is under the control and direction of a participant." *Id.* § 441.450(c); *see also* 55 Pa. Code § 52.3. The total number of hours per week for a DCW is determined by state-approved funding and the Individualized Service Plan ("ISP") that the PE creates with a Service Coordinator, who is a contractor for the state unaffiliated with Defendant. (Reeser Dep. at 77-79, 84, Def.'s Ex. A, ECF No. 52-1; Service Coordinator Dep. at 39, Def.'s Ex. B, ECF No. 52-2; Def.'s Ex. D, Decl. of Michael Hale Ex. 3, OLTL Waiver Application at 170, ECF No. 52-4.)

The regulations allow a third-party contractor to provide financial management services to PEs who use the Self-Directed Services option. *See* 42 C.F.R. §§ 441.454, 484(a)(2). Defendant provides financial management services to PEs participating in the Self-Directed Services model under a Grant Agreement with OLTL. (PPL Grant Agm't, Def.'s Ex. E, ECF No. 52-5.) The parties agree that Defendant is the only financial management contractor for the Self-Directed Services option in the Commonwealth of Pennsylvania. Therefore, Plaintiff and her mother did not have any choice but to use Defendant, as it is the only payroll contractor OLTL uses for this program and participants must use a vendor fiscal/employer agent when receiving personal directed services. (OLTL Waiver Application at 171; Grant Agm't at 19); *see also* 42 U.S.C. § 1396n; 42 C.F.R. § 441.301. The financial management services Defendant provides include processing payroll and collecting and disbursing tax withholdings. *See* 42 C.F.R. §§ 441.454, 484(a)(2).

3

Plaintiff signed a Direct Care Worker Agreement titled "Vendor Fiscal/Employer Agent (VF/EA) Financial Management Services Direct Care Worker (DCW) Agreement" both at the start of her employment and to requalify as a DCW. (Def.'s Ex. F, ECF No. 52-6.) The Agreement states that the DCW understands and acknowledges that "the VF/EA is not my employer" and that the participant "is my employer." (*Id.* at 2, 16.[2]) It also explains that Defendant will conduct a background check, will process the DCW's paychecks, and will verify that Plaintiff does not appear on the Office of Inspector General's List of Excluded Individuals/Entities or Plaintiff will not be able to work in the program. (*Id.*) It also provides that Defendant must give "Good to Go" status before the DCW can initially begin providing services. (*Id.*)

The DCW Agreement also provides that the DCW will "agree to abide by all applicable rules, regulation and policies pertaining to providing support services through the PDS program," acknowledge receipt of the ISP, agree to take part in meetings, complete all training, and maintain all records required by the program. (*Id.* at 2-3; 15-16.) The form includes that the DCW agrees to meet the necessary qualifications set out by the ISP and OLTL policies and procedures as well as provide the supports set out in the ISP. (*Id.*)

The DCW Rate Sheet provides that "If rate entered is more than allowed the maximum wage will be entered" by the VF/EA. (*Id.* at 8.) The DCW Agreement states that the DCW understands that the VF/EA is "not authorized to pay for any service not approved and authorized in the ISP or any request that exceeds the participant's budget and funds for the PDS program as stated in the ISP" and that the VF/EA will pursue all legal means to recover any payment for services not performed. (*Id.* at 5, 7, 16-17.) Aferdita Agolli, a Service Coordinator

---

[2] For this Exhibit, the Court adopts the page numbering provided by the ECF system.

for another third party contractor, responded "yes" when asked if she was aware that "in the Pennsylvania . . . if overtime is to be performed for a participant, it must be specifically authorized in the care plan." (Service Coordinator Dep. at 39.)

The Common Law Employer requirements and responsibilities outlined in the Common Law Employer Agreement included completing "all forms in the employment forms package and return[ing] the completed forms to your VF/EA," deciding "how much to pay your DCW within the OLTL established wage limits and authoriz[ing] their paychecks by reviewing and signing timesheets" and submitting "all approved purchases, invoices and timesheets to your VF/EA." (*Id.* at 9-10.) Plaintiff testified that she was aware that her mother, the PE, would train workers how she wanted services performed, set the schedule as to when work would be performed, and had some limited flexibility as to setting a DCW's hourly rate. (Knight Dep. at 127-28, Def.'s Ex. C, ECF No. 52-3.)

Defendant is listed on Plaintiff's paycheck as "an agent for employer." (*Id.* at 25-31.) Defendant maintained DCW's tax and financial forms such as Plaintiff's I-9, residency certification form for local earned income tax withholding, direct deposit application, and paysheets such as the DCW Rate Sheet and paystubs. (*See* Def.'s Ex. F at 7, 8, 11, 12, 25-31.)

Presently before the Court is Defendant Public Partnerships, LLC ("PPL" or "Defendant")'s Motion for Summary Judgment pursuant to Rule 56. (ECF No. 51.) Plaintiff opposed the motion (ECF No. 55) and Defendant replied to the opposition (ECF No. 56). The Court held argument on the Motion on August 25, 2021. (ECF No. 60.)

**II.    LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson*, 477 U.S. at 248). "[A] factual dispute is material only if it might affect the outcome of the suit under governing law." *Id*. The court must view the evidence in the light most favorable to the non-moving party. *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). However, "unsupported assertions, conclusory allegations, or mere suspicions" are insufficient to overcome a motion for summary judgment. *Schaar v. Lehigh Valley Health Servs., Inc*., 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

**III.    DISCUSSION**

Plaintiff alleges that she was not paid overtime properly despite being a non-live-in DCW who was eligible for overtime. She argues that a mistake on Defendant's part labeled her as a live-in DCW, and Defendant refused to correct the mistake and pay her for the overtime to which she was entitled by her timesheets in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., or the Pennsylvania Wage and Payment Collection Law ("WPCL"), 43 Pa. Stat. and Cons. Stat. Ann. §§ 260.1-260.45. Defendant argues that Plaintiff is not entitled to relief under either statute for unpaid overtime against Defendant because Defendant does not meet the requirements to be considered a "joint employer."

The FLSA prohibits an "employer" from failing to pay overtime compensation.  29 U.S.C. § 207(a)(1).  The Act defines an "employer" as including "any person acting directly in the interest of an employer in relation to an employee . . . ."  29 U.S.C. § 203(d).  Under the FLSA, more than one employer can be jointly liable to a plaintiff.  Joint employment liability may exist "[w]here the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer." m29 C.F.R. § 791.2(b)(3); *see also Enterprise Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 683 F.3d 462 (3d Cir. 2012).

When considering whether a joint employment relationship exists between two or more employers under the FLSA, courts use the "economic reality" test to determine "economic reality rather than technical concepts . . . ."  *Enterprise*, 683 F.3d at 467 (citation omitted).  "Joint employers" exert "significant control" over an employee by jointly determining the "essential terms and conditions of employment."  *Id.* at 468.  The following factors are inclusive, not exhaustive, for the determination of whether an entity is a joint employer:

> 1) the alleged employer's authority to hire and fire the relevant employees; 2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; 3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and 4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes.

*Id.* at 469.

The WPCL defines "employer" as "every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." 43 Pa.

7

Stat. and Const. Stat. Ann. § 260.2a. "To hold an 'agent or officer' personally liable for unpaid wages, 'evidence of an active role in decision making is required.'" *Int'l Ass'n of Theatrical Stage Employees, Local Union No. 3 v. Mid-Atl. Promotions, Inc.*, 856 A.2d 102, 105 (Pa. Super. Ct. 2004) (citing *Mohney v. McClure*, 568 A.2d 682, 685 (1990)). In *Talarico*,[3] the Third Circuit found that the same standard, the economic reality test, could be used to determine if an entity is a joint employer under the WPCL. *See Talarico*, 837 F. App'x at 84 n.1.

Here, a reasonable juror could rule in Plaintiff's favor. *See Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020). There are genuine issues of material fact as to the status of Defendant as a joint employer since the second and fourth factors of the *Enterprise* test weigh in favor of finding joint employer status. This precludes entry of judgment on either the FLSA or the WPCL. The parties agree that the first and third *Enterprise* factors weigh against a finding that Defendant was a joint employer.

The second factor is the authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment. *Enterprise*, 683 F.3d at 469. While the paperwork outlines that the VF/EA is not the DCW's employer, this is not dispositive. Based on the

---

[3] Plaintiff asks us to apply the doctrine of offensive non-mutual *res judicata*/collateral estoppel. It does not apply to the facts of this case. *See Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 248-49 (3d Cir. 2006) (finding "the application of non-mutual offensive collateral estoppel presents a unique potential for unfairness" and that district courts "have broad discretion to determine when to apply" the doctrine). It would be inequitable to apply the doctrine when Plaintiff could have easily joined, and here, in fact, did join the previous action before voluntarily quitting that case. This fosters the exact "wait and see" attitude that the Supreme Court was concerned would occur if they allowed non-mutual offensive use of collateral estoppel. *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 330 (1979) (finding "potential plaintiffs will have everything to gain and nothing to lose by not intervening in the first action . . . . Since a plaintiff will be able to rely on a previous judgment against a defendant but will not be bound by that judgment if the defendant wins . . . ."). We will not apply this doctrine here due to the unfairness toward Defendant.

*Enterprise* test, it is the economic reality that matters.  When interpreting the facts in the light most favorable to the Plaintiff, as we must on summary judgment, it is apparent that despite the PE setting the wage rate and developing the ISP with the Service Coordinator, the VF/EA, Defendant here, enforces the maximum pay rate by setting a cap on payment at the time a DCW's timesheets are submitted based on the Commonwealth's disbursement rate and the ISP.  The VF/EA also provides rules such as that the DCW must complete any required training (including onboarding paperwork provided by the VF/EA), attend meetings, and maintain required documents and records.

      The fourth factor is the alleged employer's actual control over employee records.  The DCW agreement provides that the VF/EA will process the DCW's paystubs by collecting timesheets and providing paychecks through direct deposit.  Defendant's name is on Plaintiff's paystubs and regulations provide that Defendant collects and disburses a DCW's tax withholdings.  The DCW agreement also provides that all preemployment paperwork must be given to the VF/EA to run a background check.

      Given these facts, the second and fourth factor weigh in favor of finding that Defendant is a joint employer.  The Third Circuit has made it clear that the *Enterprise* test should not be "blindly applied."  *See Enterprise*, 683 F.3d at 469 (citation omitted).  The court must ultimately look at the "total employment situation and the economic realities of the work relationship" to make the decision if an entity qualifies as a joint employer.  *Id.* (citation omitted).  Given these parameters, two factors in favor and two against Defendant's joint employer status is sufficient to create a genuine issue of material fact as to whether Defendant is a joint employer.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment will be denied. An appropriate Order follows.

BY THE COURT:

*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**
